IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LETICIA F.,[1]

              Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

              Defendant.

No. 3:22-cv-00489-HZ

OPINION & ORDER

George J. Wall
Caitlin S. Laumaker
Law Offices of George J. Wall
825 N.E. 20th Ave
Suite 330
Portland, OR 97232

        Attorneys for Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

John Drenning
Social Security Administration
Office of the General Counsel
6401 Security Boulevard
Baltimore, MD 21235

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

    Plaintiff Leticia F. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

    Plaintiff applied for DIB on October 30, 2014, alleging an onset date of September 10, 2010. Tr. 169-70.[2] Plaintiff's date last insured ("DLI") is December 31, 2014. Her application was denied initially and on reconsideration. Tr. 110-12.

    On March 9, 2017, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 59-70. On May 2, 2017, the ALJ found Plaintiff not disabled during the closed period of September 10, 2010, through December 31, 2014. Tr. 35-51. The Appeals Council denied review. Tr. 1-6. Plaintiff appealed the matter to the United States District Court. On April 2, 2019, the District Court remanded the matter to the ALJ on the grounds that the ALJ failed to obtain and to review pre-July 2012 records from Plaintiff's treating physicians and did not have an opportunity to review an August 2017 report from treating physician, Mollie Thompson, M.D.

    On September 17, 2019, Plaintiff appeared with counsel for a hearing on remand.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 7.

Tr. 838-51. On October 2, 2019, the ALJ found Plaintiff not disabled during the closed period of September 10, 2010, through December 31, 2014. Tr. 2203-18. Plaintiff again appealed the matter to the United States District Court. On October 9, 2020, the District Court remanded the matter to the ALJ pursuant to the parties' stipulation to further develop the medical record between September 2010 and July 2012 including all available treatment notes from treating chiropractor, Ryan Fisher, D.C., and Dr. Thompson; to re-evaluate the medical evidence and Plaintiff's subjective complaints; and to conduct the sequential evaluation.

On April 19, 2021, Plaintiff appeared with counsel for a hearing on remand. Tr. 2182-2202. On July 23, 2021, the ALJ found Plaintiff not disabled during the closed period of September 10, 2010, through December 31, 2014, and, therefore, not entitled to benefits. Tr. 2155-73. On March 31, 2022, Plaintiff appealed the ALJ's decision to this Court.

## FACTUAL BACKGROUND

Plaintiff alleges disability during the relevant period based on fibromyalgia; psoriatic arthritis; "bilateral neuropathy, legs and feet"; low lumbar pain; edema; myofascial pain dysfunction syndrome; and upper back and neck pain. Tr. 92. At the time of her alleged onset date, Plaintiff was 46 years old. Tr. 169. Plaintiff has a GED and past relevant work experience as a data-entry clerk and accounting clerk. Tr. 2173.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step

3 – OPINION & ORDER

procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. § 404.1520(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S DECISION

At step one, the ALJ noted Plaintiff worked during the relevant period, but concluded "this work activity did not rise to the level of substantial gainful activity," and, therefore,

Plaintiff did not engage in substantial gainful activity. Tr. 2161. Next, at steps two and three, the ALJ determined that during the relevant period Plaintiff had the following severe impairments: "osteoarthritis/psoriatic arthritis, borderline obesity, a history of lower extremity edema and neuropathy, and fibromyalgia." Tr. 2161. The ALJ, however, determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment during the relevant period. Tr. 2163. The ALJ concluded that during the relevant period Plaintiff had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(b) except:

> she was further limited to no more than occasional balancing, crawling, kneeling, stooping, crouching, and climbing; she would be unable to use her lower extremities for any pushing and pulling activities and therefore would be unable to operate foot pedals; and would have needed to avoid exposure to vibrations, moving machinery, unprotected heights, and similar hazards.

Tr. 2164. At step four, the ALJ concluded that Plaintiff could perform her past relevant work during the closed period. Tr. 2173. Thus, the ALJ concluded that Plaintiff was not disabled during the relevant period. Tr. 2173.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)(internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is

susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez,* 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's")(internal quotation marks omitted).

## DISCUSSION

Plaintiff contends the ALJ erred when she (1) partially rejected Plaintiff's testimony, (2) partially rejected Dr. Thompson's opinion and explanation, and (3) failed to include limitations assessed by Plaintiff and Dr. Thompson in her assessment of Plaintiff's RFC.

**I.    Subjective Symptom Testimony**

Plaintiff alleges the ALJ erred when she partially rejected Plaintiff's testimony.

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)(superseded on other grounds). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quotation omitted). The claimant need not show the "impairment could reasonably be expected to cause the severity of the symptom . . . alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Id.* at 1014 (quotation omitted).

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [the]

6 – OPINION & ORDER

symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15. *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)(same).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)(quoting *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995)(The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Plaintiff testified at the April 19, 2021 hearing that she stopped working in September 2010 because she was experiencing sharp pain in her left leg and a "numbing feeling in [her] hands and [her] wrists from all the typing." Tr. 2192. Plaintiff stated that in 2010 she could type for 15 minutes at a time and would have to stop because her hands would start going numb and she would have pains "going up [her] arms." Tr. 2193. Plaintiff would have to rest her hands for 20 or 30 minutes before she could resume typing. Plaintiff noted that in 2010 her hands would be swollen by the end of her workday. Tr. 2194. Plaintiff testified that during the relevant period she had trouble "lift[ing] dishes out of the cupboard, being able to brush [her] hair, pick[ing] up things," and sitting and standing "for long periods of time." Tr. 2196. Plaintiff noted she had difficulty sitting through her shift at work due to "sharp pain that would shoot into [her] hip, down into the back of [her] leg and into [her] knee" and her lower back would "throb."

Tr. 2196-97. Plaintiff stated that during the relevant period she had burning pain in her feet. Tr. 2197. Plaintiff testified that she rarely drove during the relevant period because of pain and inability "to hold onto the steering wheel and make proper turns." Tr. 2200. During the relevant period Plaintiff could sit for 15 or 20 minutes and then would have to "get up [and] walk around" for 15 minutes. Tr. 2200. Plaintiff testified that during the relevant period she had to lie down "during the daylight hours" every day for one or two hours. Tr. 2201.

At the September 17, 2019, hearing Plaintiff testified that during the relevant period she bowled once a week, but she had trouble holding and gripping the ball. Tr. 844. Plaintiff was unable to type more than four or five lines of text without stopping to rest her hands for one or two hours in 2010. Tr. 845. Plaintiff testified that during the relevant period she could not lift a gallon of milk or use zippers and buttons. Tr. 846. Plaintiff stated that in 2014 she was having "quite a bit of edema from the ankles up to just about an inch and a half below [her] knees" and it hurt to walk when her legs were swollen. Tr. 847. As a result, Plaintiff had to elevate her feet every day for six-to-eight hours. Plaintiff also noted she did water aerobics in 2014, but could not tolerate exercise other than water aerobics. Tr. 850.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms during the relevant period," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 2165. Specifically, the ALJ noted Dr. Thompson began treating Plaintiff in December 2011, at which time she noted Plaintiff reported experiencing knee and hip pain, but she did not have pain when she was lying down or seated and pain did not cause her to wake in the night. Tr. 2482. Plaintiff attended physical therapy but admitted she did not "carr[y] through on doing [the exercise] at

home." Tr. 2483. On examination Dr. Thompson noted Plaintiff had "no edema" and the "full range of motion of shoulders, elbows, wrists, small joints of the hands, hips, knees, ankles, and toes." Tr. 2483. Plaintiff had "some mild tenderness of the left knee." *Id*. Dr. Thompson concluded Plaintiff likely had chronic pain, but noted she is "is relatively functional . . . so [Dr. Thompson did] not believe any additional interventions [were] needed, other than instituting an exercise program." Tr. 2482. Dr. Thompson did not recommend starting gabapentin or Lyrica because she did "not think [Plaintiff's] symptoms [were] severe enough to warrant the possibility of side effects from those medications." *Id.* Dr. Thompson advised Plaintiff that she did not "have significant osteoarthritis of her knees" and her hip x-ray was "unremarkable." *Id*.

In February 2012 Plaintiff reported she had just returned from a trip to Texas. Tr. 2353. In May 2012 Plaintiff reported returning from a trip to Las Vegas, where she did "really well overall." Tr. 2350.

In July 2012 Plaintiff reported to Don Lim Ji, M.D., treating physician, that she was "not exercising regularly but [was] active w/[her] job. Cleans houses. Up and down stairs often." Tr. 372.

In August 2012 Plaintiff reported to Dr. Thompson that she had worsening lower-extremity edema, but her joints were "without redness, warmth, or swelling." Tr. 2480. On December 14, 2012, Plaintiff reported her "swelling ha[d] almost completely resolved." Tr. 324. Plaintiff reported experiencing left-knee pain, but noted "there has not been any redness, warmth, or swelling" and her other joints were "not stiff, painful, or swollen." Tr. 324. Dr. Thompson indicated Plaintiff's knee pain was "likely some irregular cartilage, nothing on x-ray to suggest significant osteoarthritis, nothing on exam to suggest rheumatoid arthritis or other inflammatory condition." Tr. 325.

9 – OPINION & ORDER

In March 2013 Plaintiff reported to FNP Katy Stropnicky that she "is up and down stairs a lot, bowls and cleans home." Tr. 385. Plaintiff also reported getting up in the morning "between 7am-10 am, doesn't nap during the day." *Id*. Plaintiff stated her fibromyalgia symptoms were "well controlled with Aleve prn and [a] gluten free diet." Tr. 388.

In November 2013 Dr. Thompson stated Plaintiff's symptoms of swelling in her fingers "suggest[ed] . . . likely early psoriatic arthritis." Tr. 322. Dr. Thompson, however, did "not feel like [Plaintiff's] disease [was] severe enough that she actually has to take medication at this time." *Id*.

In February 2014, Plaintiff reported bowling once a week. Tr. 320. In March 2014 Plaintiff reported lower-extremity edema, but noted she was going on a 12-week vacation to Alaska and Hawaii. Tr. 316, 416. In June 2014 Plaintiff reported "dully, achy joint and muscle pain," but noted she "[j]ust returned from Florida . . . where she walked a lot while at Disneyworld." Tr. 1241. Dr. Fisher noted Plaintiff's "[b]ilateral feet and ankles are still slightly swollen from the usage." *Id.* In July 2014 Plaintiff reported to Dr. Fisher that she was having "sharp, stabbing, joint and muscle pain and stiff[ness]" because she "sat at the couch with the computer on her lap for several hours." T. 1237. In August 2014, Plaintiff told Dr. Fisher that she "helped moved and clean her sister's house." Tr. 1235. In October and November 2014 Plaintiff reported doing water aerobics twice a week and walking for 30 minutes three or four days per week. Tr. 302, 428.

The Court concludes on this record that the ALJ did not err when she partially rejected Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms because the ALJ provided specific, clear, and convincing reasons supported by substantial evidence in the record for doing so.

## II. Medical Opinion Evidence

Plaintiff contends the ALJ erred when she gave no weight to Dr. Thompson's August 8, 2017 opinion and April 8, 2021 explanation.

Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). For application filed before March 27, 2017, generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. *Id.*; 20 C.F.R. § 404.1527(c)(1)-(2). More weight is given to an examining physician than to a nonexamining physician. *Garrison*, 759 F.3d at 1012.

If the treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is consistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). If the treating physician's opinion is not contradicted by another physician, the ALJ may reject it only for "clear and convincing" reasons supported by substantial evidence in the record. *Ghanim*, 763 F.3d at 1160-61.

When a treating physician's opinion is contradicted by another treating or examining physician, the ALJ may not reject the treating physician's opinion without providing "specific and legitimate reasons" which are supported by substantial evidence in the record. *Id.* at 1161; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the ALJ must still articulate the relevant weight to be given to the opinion under the factors provided for in 20 C.F.R. § 404.1527(c)(2)-(6); *Ghanim*, 763 F.3d at 1161; *Orn*, 495 F.3d at 632-33.

11 – OPINION & ORDER

On August 8, 2017, almost three years after the end of the relevant period, Dr. Thompson submitted a medical opinion in which she stated she had been Plaintiff's treating physician since December 2011. Dr. Thompson listed Plaintiff's diagnoses as fibromyalgia, psoriatic arthritis, and peripheral neuropathy and indicated Plaintiff's prognosis was poor due to chronic pain from fibromyalgia. Tr. 1016. Dr. Thompson opined Plaintiff was able to stand and walk for less then two hours in an eight-hour workday, to sit for three hours in an eight-hour workday, to sit for 30 minutes before changing position, to stand for 15 minutes before changing position, had to "walk around" every 30 minutes for five minutes at a time, needed to lie down "at unpredictable intervals during a work shift," could occasionally lift less than ten pounds, could rarely lift ten pounds, could never lift 20 or more pounds, and would be absent more than four times per month. Tr. 1018-1020. Dr. Thompson stated Plaintiff's ability to work "8 hours a day, 40 hours a week, and maintain a normal work pace" was poor and Plaintiff's "experience of symptoms severe enough to interfere with attention and concentration" was "very frequent." Tr. 1017.

On April 8, 2021, Dr. Thompson submitted a letter in which she "explain[ed] her responses" in the August 8, 2017 opinion. Dr. Thompson noted that during the relevant period Plaintiff's "reported symptoms of hand, knee and leg pain were significant enough to greatly impair function," Tr. 2946. Dr. Thompson stated that "[w]ith inflammatory conditions, joint and muscle pain is commonly felt by the patient before the clinician is able to detect synovitis in joints." *Id.* Although Plaintiff "described significant hand and knee pain and joint stiffness as early as 2013, [Dr. Thompson] was unable to document synovitis until her disease became more advanced." *Id.* Dr. Thompson noted she prescribed methotrexate for Plaintiff in February 2014 because at that point Plaintiff's "disease activity and inflammation were severe enough that

[Dr. Thompson] felt the potential benefit to relieving pain and improving function outweighed the potential risks." *Id*. Dr. Thompson also stated Plaintiff has "suffered from fibromyalgia pain and fatigue for a number of years" and Plaintiff "has shown clear evidence of multiple soft tissue tender points affecting all four quadrants of the body, on almost every occasion [Dr. Thompson] examined her even if not noted in the office visit." *Id*. Dr. Thompson concluded that due to pain and fatigue from fibromyalgia and psoriatic arthritis Plaintiff "was unable to sustain a level of function that enabled her to work even at a sedentary job prior to 12/2014." *Id*.

The ALJ gave no weight to Dr. Thompson's August 2017 opinion or her April 2021 explanation noting Dr. Thompson's treatment notes during the relevant period do not support the severity of the findings Dr. Thompson suggested in her August 2017 opinion. For example, as noted, in December 2011 Dr. Thompson noted Plaintiff had "no edema" and the "full range of motion of shoulders, elbows, wrists, small joints of the hands, hips, knees, ankles, and toes." Tr. 2483. Plaintiff had "some mild tenderness of the left knee," but Dr. Thompson concluded Plaintiff "is relatively functional . . . so [she did] not believe any additional interventions [were] needed, other than instituting an exercise program." Tr. 2482. Dr. Thompson also did not recommend starting gabapentin or Lyrica because she did "not think [Plaintiff's] symptoms [were] severe enough to warrant the possibility of side effects from those medications." *Id*. Dr. Thompson advised Plaintiff that she did not "have significant osteoarthritis of her knees" and her hip x-ray was "unremarkable." *Id*. Similarly in December 2012 Plaintiff reported to Dr. Thompson that her "swelling ha[d] almost completely resolved." Tr. 324. Plaintiff said she had left-knee pain, but noted "there has not been any redness, warmth, or swelling" and her other joints "are not stiff, painful, or swollen." Tr. 324. Dr. Thompson indicated Plaintiff's knee pain was "likely some irregular cartilage, nothing on x-ray to suggest significant osteoarthritis,

13 – OPINION & ORDER

nothing on exam to suggest rheumatoid arthritis or other inflammatory condition." Tr. 325. In November 2013 Dr. Thompson stated Plaintiff's symptoms of swelling in her fingers "suggest[ed] . . . likely early psoriatic arthritis." T. 322. Dr. Thompson, however, did "not feel like [Plaintiff's] disease [was] severe enough that she actually has to take medication at this time." *Id*. Although Dr. Thompson prescribed methotrexate in February 2014, Plaintiff stopped taking it in March 2014 because she was having side-effects and she was going on a 12-week trip. "[I]ncongruity between [a treating physician's] questionnaire responses and her medical records" is a legally sufficient reason to reject treating physician's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (2008).

The ALJ also noted Plaintiff's activity level during the relevant period did not support the limitations suggested by Dr. Thompson. For example, as noted, during the relevant period Plaintiff bowled once per week, went on several trips including to Texas and Las Vegas, as well as a 12-week vacation to Alaska and Hawaii and reported doing a lot of walking at Disneyland. Plaintiff also reported cleaning and painting her sister's house, using stairs extensively, and sitting on the couch for six-to-eight hours.

On this record the Court concludes the ALJ did not err when she gave no weight to Dr. Thompson's opinion and explanation because the ALJ provided clear and convincing reasons for doing so based on substantial evidence in the record.

### III.   RFC

Plaintiff asserts the ALJ erred when she failed to include in her assessment of Plaintiff's RFC all of Plaintiff's limitations set out in Plaintiff's testimony and in Dr. Thompson's opinion and explanation. The Court, however, has concluded the ALJ did not err when she partially rejected Plaintiff's testimony and Dr. Thompson's opinion and explanation. Accordingly, the

Court also concludes the ALJ did not err when she did not include all of the limitations set out in Plaintiff's testimony and in Dr. Thompson's opinion and explanation in her assessment of Plaintiff's RFC.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED and this matter is DISMISSED.

IT IS SO ORDERED.

DATED:___February 24, 2023___

_____
MARCO A. HERNÁNDEZ
United States District Judge

15 – OPINION & ORDER